# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:09CV96-GCM-DSC

| | |
|---|---|
| JANICE SCHAFER AS GUARDIAN AD LITEM FOR WMS, <br>     Plaintiff, <br><br> vs. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security Administration, <br>     Defendant. | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #10) and "Memorandum of Law" (document #11), both filed June 24, 2009; and the Defendant's "Motion for Summary Judgment" (document #15) and "Memorandum in Support of the Commissioner's Decision" (document #16), both filed September 25, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Although the Defendant requested oral argument, the undersigned concludes that the written submissions, administrative record, and applicable authority are sufficient for resolution of the parties' cross-motions. The undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for child's insurance benefits on September 3, 2004 on the

record of the deceased wage earner, Don Francis Schafer, Jr, who died on March 5, 1993. Plaintiff's application was denied initially and on reconsideration.

Plaintiff filed a timely Request for Hearing, and a hearing was held on July 23, 2008. On August 21, 2008, the Administrative Law Judge ("ALJ") issued a decision finding that the minor child, WMS, who was conceived after the wage earner's death, was entitled to child's insurance benefits on the record of the deceased wage earner. (Tr. 12-24).

On January 16, 2009, the Appeals Council on its own motion reviewed the hearing decision under the error of law and substantial evidence provisions. 20 C.F.R. §§ 404.969-404.970. The Appeals Council determined that the minor child was not entitled to child's insurance benefits because the laws of the Commonwealth of Virginia would not have allowed him to have inheritance rights in the wage earner's estate, and as such, the minor child did not have the status of "child" of the wage earner under section 416(h)(2)(A) of the Social Security Act. (Tr. 7-11). The Appeals Council's decision is the final decision of the Commissioner.

Plaintiff filed the present action on March 10, 2009. The parties' cross-dispositive motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District

Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.  DISCUSSION OF CLAIM

The relevant facts are not in dispute. Plaintiff and the wage earner were married on June 27,

1992. (Tr. 50). Shortly thereafter, the wage earner became ill, and was diagnosed with cancer. (Tr. 49). According to Plaintiff's application, in anticipation of sterilization due to chemotherapy, the wage earner deposited semen samples for long-term cryogenic preservation for the "possibility of having a child later." (Tr. 49). The wage earner died on March 5, 1993, while domiciled in Virginia. (Tr. 17, 47). Plaintiff asserts that in April 1999, she conceived a child through artificial insemination using the wage earner's cryopreserved sperm. (Tr. 42-43, 47-49). On January 13, 2000, approximately seven years after the wage earner's death, Plaintiff gave birth to a boy, WMS, in Austin, Texas. (Tr. 47).

On January 3, 2001, Plaintiff filed a Petition to Establish Parentage of a Child with the District Court of Travis County, Texas, which was an uncontested, ex parte proceeding. (Tr. 99-101). The Court issued an Order that same day, finding and adjudicating that the wage earner was the father of WMS, and that the Texas Bureau of Vital Statistics would enter the wage earner's name on WMS's birth certificate as his father. (Tr. 104-106). WMS's birth certificate indicates that he was born on January 13, 2000, to Janice Lee Pendergrass Schafer and to Don Francis Schafer, Jr., in Austin Texas. (Tr. 107). There is, however, no evidence in the record that the wage earner ever consented in writing to his semen being implanted or to being the parent of a child conceived after his death.

In 1939, Congress amended the Social Security Act to provide benefits to family members who were dependent on an insured worker before his death. Social Security Act Amendments of 1939, Pub. L. No. 379 § 202, 53 Stat. 1363-1367 (1939). Congress' purpose in adding child's benefits was to protect the child from the loss of support due to the unanticipated death of a parent. S. Rep. No. 89-404, 2050 (1965), reprinted in 1965 U.S.C.C.A.N. 1943, 2050; Mathews v. Lucas,

4

427 U.S. 495, 507 (1976).

Under the Act, an individual who is an insured wage earner's child and is dependent on the insured at the time of his death is entitled to child's insurance benefits. 42 U.S.C. § 402 (d)(1). Section 416(e)(1) of the Act defines a "child" as "the child or legally adopted child of an individual." 42 U.S.C. § 416(e)(1). In determining whether an applicant is the child of the deceased wage earner for purposes of section 416(e), "the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property . . . . by the courts of the State in which [the deceased wage earner] was domiciled at the time of his death." 42 U.S.C. § 416(h)(2)(A); *see* 20 C.F.R. § 355(a)(1). Thus, in determining whether an applicant is the child of a deceased wage earner, the Commissioner must consider the intestacy laws of the state where the insured was domiciled at the time of his death.

Prior to the Supreme Court's decision in Lucas, supra, the Commissioner required an applicant for child's insurance benefits with inheritance rights who was not legitimate or legitimated to show actual dependency upon an insured individual. Social Security Ruling 79-35, 1979 WL 15537. However, in Lucas, the Supreme Court stated that a child who is entitled to inherit under state intestacy law pursuant to § 416(h)(2)(A) of the Act is "legitimate" within the meaning of section 402(d)(3), and thus is deemed dependent. Lucas, 427 U.S. at 515 n.17. The Supreme Court's interpretation of the Act is incorporated in the Agency's regulations and policy guidance. 20 C.F.R. §§ 404.355, 404.361(a); Social Security Ruling 77-2c, 1977 WL 15668. As a result, although the purpose of the Act's survivorship provisions is to replace the support a child loses when his father dies, the Act is broad in its inclusion of children who may not have actually been dependent on the insured, provided the child has inheritance rights under state law. That is because,

5

as the Supreme Court has recognized, "where state intestacy law provides that a child may take personal property from a father's estate, it may reasonably be thought that the child will more likely be dependent during the parent's life and at his death." Lucas, 427 U.S. at 514.

If an applicant is not entitled to inherit under state intestacy law and thereby qualify as a "child" of the wage earner pursuant to section 416(h)(2)(A) of the Act, Congress provided three alternative mechanisms for establishing child status. 42 U.S.C. §§ 416(h)(2)(B), (h)(3). However, the language in these alternatives clearly requires the insured to be living at the time of the child's conception in order to establish "child" status. 42 U.S.C. § 416(h)(2)(B) (applicant is deemed to be the "child" if the insured and other parent went through a marriage ceremony that would have been valid but for certain legal impediments); 42 U.S.C. § 416(h)(3)(C)(I) (applicant is deemed to be the "child" if the insured had acknowledged paternity in writing, or if a court decreed the insured to be the parent or ordered the insured to pay child support, and "such acknowledgment, court decree, or court order was made before the death of the insured"); and 42 U.S.C. § 416(h)(3)(C)(ii) (applicant is deemed the "child" if there is satisfactory evidence that the insured was the applicant's parent and the insured was living with or supporting the applicant at the time of death). Therefore, no posthumously-conceived children will qualify under the alternative provisions of the Act. Accordingly, as the parties agree, the only way that WMS can establish "child" status is by establishing his right to inherit as the wage earner's child under Virginia intestacy law pursuant to section 416(h)(2)(A) of the Act.[1]

---

[1] Many circuit courts have generally recognized that the Commissioner applies state intestacy law to determine whether a child is entitled to benefits under section 416(h)(2)(A) of the Act. See, e.g., Schoenfeld v. Apfel, 237 F.3d 788, 792-793 (7th Cir. 2001); Smith on behalf of Sisk v. Bowen, 862 F.2d 1165, 1166 (5th Cir. 1989); Patterson v. Bowen, 839 F.2d 221, 225 n.1 (4th Cir. 1988); Morales on behalf of Morales v. Bowen, 833 F.2d 481, 483 (3d Cir. 1987); Gray v. Richardson, 474 F.2d 1370, 1373 (6th Cir. 1973); Jones v. Finch, 416 F.2d 89, 90 (10th Cir. 1969).

In 1991, Virginia revised its domestic relations statute and its inheritance statute to specifically address the legal status of children conceived through assisted conception. Va. Acts 1991, c. 600 (Attachment 4); Va. Code Ann. §§ 20-156 to 20-165 (2009). For purposes of intestate succession, Virginia's assisted conception statute specifically provides that "a child born more than ten months after the death of a parent shall not be recognized as such parent's child" for the purposes of intestate succession, probate law exemptions, allowances, other protections for children in parent's estates, or "determining eligibility of a child or its descendants to share in a donative transfer from any person as an individual or as a member of a class determined by reference to the relationship." Va. Code Ann. § 20-164. In the present case, as WMS was born almost seven years after the wage earner's death, he clearly cannot meet the ten-month time frame for inheritance from the wage earner, as required under Virginia law. Thus, the plain language of the Virginia statute precludes WMS from establishing that he could inherit as the wage earner's child under Virginia law. Boynton v. Kilgore, 623 S.E.2d 922, 926 (Va. 2006) (holding that "[c]ourts apply the plain language of a statute unless the terms are ambiguous, or applying the plain language would lead to an absurd result.") (citations omitted).

Moreover, another provision of the Virginia Code governing the parentage of children resulting from assisted conception states that while a child "resulting from the insemination of a wife's ovum using her husband's sperm, with his consent, is the child of the husband and wife notwithstanding that, during the ten-month period immediately preceding the birth, either party died;" an individual "who dies before in utero implantation of an embryo resulting from the union of his sperm or her ovum with another gamete, whether or not the gamete is that of the person's spouse, is not the parent of any resulting child unless (I) implantation occurs before notice of death

7

can reasonably be communicated to the physician performing the procedure or (ii) the person consents to be a parent in writing executed before the implantation." Va. Code Ann. § 20-158B. Accordingly, even had WMS been born within ten months of the wage earner's death, because there is no evidence that the wage earner consented to be a parent in writing prior to his death, he is not the parent of WMS under Virginia law.

The remaining question presented is whether, notwithstanding the above analysis, Virginia courts would have found WMS entitled to inherit from the wage earner based on the Texas court order which determined that WMS is the wage earner's child.

Under the Full Faith and Credit clause of the United States Constitution, states must give full faith and credit to the public acts, records and judicial proceedings of other states. U.S. Const. art IV, § 1; 28 U.S.C. § 1738; <u>Baker by Thomas v. General Motors Corp.</u>, 522 U.S. 222, 231-232 (1998). As such, a final judgment in one state, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. <u>Baker</u>, 522 U.S. at 233. In the present case, however, the Texas district court did not have jurisdiction over all persons governed by the judgment. The Texas Family Code states that the necessary parties to a proceeding on paternity are the mother of the child, and the "man whose paternity of the child is to be adjudicated." Tex. Fam. Code § 160.603 (Vernon 2009). While the wage earner was a necessary party, he was deceased at the time of the paternity proceeding and not a party to the action. The Code goes on to state that "an individual may not be adjudicated to be a parent unless the court has personal jurisdiction over the individual." Tex. Fam. Code § 160.604 (Vernon 2009). The Court did not have personal jurisdiction over the wage earner, since he was deceased at the time of the proceedings to establish paternity. Moreover, the Supreme Court of

8

Virginia has determined that a judgment rendered in another state is not "entitled to full faith and credit in another state against one not a party to the original proceeding," and as was previously stated, the wage earner was not a party to the proceeding in Texas. Eastern Indemnity Company of Maryland, etc. v. Hirschler, Fleischer, Weinberg, Cox & Allen, 366 S.E.2d 53, 55 (Va. 1988) (citing Nero v. Ferris, 284 S.E.2d 828, 832 (Va. 1981); Bloodworth v. Ellis, 267 S.E.2d 96, 98 (Va. 1980)).

The Virginia Code also states that the Commonwealth will only give "records of courts not of this Commonwealth the full faith and credit given them in the courts of the jurisdiction from whence they came." Bennett v. Commonwealth of Virginia, 374 S.E.2d 303, 310 (Va. 1988). Here, the state district court's order is inconsistent with the provisions of Chapter 160 of the Texas Family Code. Section 160.707 of the Family Code provides that "[i]f a spouse dies before the placement of eggs, sperm, or embryos, the deceased spouse is not a parent of the resulting child unless the deceased spouse consented in a record kept by a licensed physician that if assisted reproduction were to occur after death the deceased spouse would be a parent of the child." Tex. Fam. Code § 160.707 (Vernon 2009). As was stated above, there is no evidence in the record that the wage earner consented in a record to be the parent of a child conceived through artificial reproduction after his death. Notably, the records of the cryogenic preservation facility where the wage earner's sperm was stored identify Plaintiff, rather than the wage earner, as the facility's client.

Therefore, since it does not appear that the Texas court order establishing paternity is in accord with Texas law, the Virginia courts would likewise not be required to give full faith and credit to the order establishing the paternity of WMS.

Finally, Plaintiff having failed to establish that WMS would inherit under Virginia's intestacy laws, there is no other basis for finding him "dependent" on the wage earner at the time of his death.

9

Lucas, 427 U.S. at 515 n.17 (although Act requires claimant to establish parentage and dependency, child entitled to inherit under state intestacy law is deemed dependent). As recognized by the Supreme Court in Lucas, the purpose of child's insurance benefits is to protect the insured's dependent children from an unexpected loss of income due to a parent's death. 427 U.S. at 507. Since WMS was not in existence at the time of the wage earner's death, he could not have been actually dependent or even deemed dependent upon the wage earner at that time. Consequently, WMS has suffered no unexpected loss of support, as Plaintiff chose to conceive through artificial insemination six years after the wage earner's death. Consistent with the Social Security Act's purpose and the policy underlying it, WMS cannot and should not be considered dependent under the Act. Consequently, for this reason as well, WMS is not entitled to dependent child benefits.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #10) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #15) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with

the District Court constitutes a waiver of the right to <u>de novo</u> review by the District Court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder</u>, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Diamond</u>, 416 F.3d at 316; <u>Wells</u>, 109 F.3d at 201; <u>Page</u>, 337 F.3d at 416 n.3; <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Graham C. Mullen</u>.

**SO RECOMMENDED AND ORDERED**.

Signed: October 5, 2009

_____
David S. Cayer
United States Magistrate Judge